**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| ROBERT J. MCGEE, JR. an individual, II IN ONE CONTRACTORS, INC., an Illinois Corporation, II IN ONE REBAR, INC., an Illinois Corporation, and CONCRETE COLLECTIVE, a joint venture between II IN ONE CONTRACTORS, INC., W.E. O'NEIL CONSTRUCTION CO., and TRICE CONSTRUCTION COMPANY,<br><br>                      Plaintiffs,<br><br>     v.<br><br>THORNTON TOMASETTI, INC., a New York Corporation, and SCOTT A. SCHNEIDER, an individual,<br><br>                      Defendants. | Case No. 1:25-cv-600<br><br>Hon. Judge Jeffrey Cummings |

**<u>DEFENDANTS' BRIEF IN SUPPORT OF 12(b)(6) MOTION TO DISMISS</u>**

**INTRODUCTION**

To sustain their lawsuit – which smears Thornton Tomasetti as racist without a shred of factual support – Plaintiffs need the Court to ignore decades of jurisprudence remedying *actual* race-based discrimination, and conflate professional criticism and enforcement of technical specifications with racial discrimination solely on account of Plaintiffs' minority status. But Plaintiffs, who are concrete subcontractors working on the historic construction of The Barack Obama Presidential Center, are not immune from having their work scrutinized simply because they are minority-owned, or because the project prioritizes using the services of minority-owned businesses. Instead, they are entitled to be treated like any other subcontractor, with all the run-of-the-mill disagreements and disputes that accompany enormous projects like this one. Professional criticism, without more, is not racism.

The Complaint should be dismissed not only because Plaintiffs fail to allege facts that plausibly paint a picture of racism (there are no alleged racist comments, no observed racial bias, and no facts showing discriminatory treatment), but also because they concede that Thornton Tomasetti's actions were motivated — not by any harbored discrimination – but by a desire to professionally defend their services in the face of critiques levied against them in the first place.

Every count of the Complaint fails. Plaintiffs' § 1981 claim is devoid of facts plausibly suggesting racism; their accusation of defamation is not based on any actionable expressions of fact; and necessary elements of their tortious interference claims are missing. As set forth below, the so-called "Defamatory Memo," the centerpiece of the Complaint, contains nothing more than expressions that Plaintiffs made serious errors on key parts of this project and lacked relevant industry experience. Plaintiffs attempt to impute nefarious motives to the Memo, yet offer nothing but empty accusations in support.

Plaintiffs may be displeased that The Obama Foundation and Thornton Tomasetti have challenged the quality of their work on this monumental construction project – which is designed to uplift Chicago's south side community and prioritize the services of minority-owned businesses in the process – but they cannot fairly brand Thornton Tomasetti as racist without any factual support whatsoever. The Complaint should be dismissed, and the door shut on Plaintiffs' outrageous proposition that minority-owned businesses are exempt from scrutiny, critique, or the need to comply with project specifications, however "burdensome." There is no relevant legal standard that entitles Plaintiffs to relief.

## ARGUMENT

Plaintiffs' Complaint should be dismissed for failure to state a claim. To survive dismissal under Rule 12(b)(6), a complaint must include sufficient factual matter, accepted as true, to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Plaintiffs' Complaint, which rests on vague, conclusory assertions, rather than specific facts, and which fails to set forth key elements of their claims, should be dismissed.

**A. Plaintiffs fail to state a claim for racial discrimination under § 1981 because they do not allege facts that plausibly set forth racial animus.**

Racially discriminatory animus is the essential ingredient of a § 1981 claim, and it is completely absent from Plaintiffs' pleading. *Freeman v. Chicago Park Dist.*, 189 F.3d 613, 618 (7th Cir.1999). To sustain a § 1981 claim, race must be the "but-for" cause of the defendant's injury. *Muhammad v. Univ. of Chicago*, 16-CV-09998, 2024 WL 4367874, at *5 (N.D. Ill. Sept. 30, 2024). "Allegations of race discrimination must be supported by material facts, not mere

conclusions." *Linda Constr. Inc. v. City of Chicago*, No. 15 C 8714, 2016 WL 4429893, at *2 (N.D. Ill. Aug. 22, 2016). This burden is not satisfied "simply by tacking 'because of [Plaintiffs'] race' onto the allegations." *Id.* Merely saying conduct was racially motivated "does not make it so." *Id.* Rather, a plaintiff "must connect the dots between the alleged cause (their race) and the alleged effect (the discriminatory conduct)." *Id.*

Plaintiffs' § 1981 claim fails, first, because the pleading describes the conduct of Defendants' Thornton Tomasetti and Scott Schneider (collectively, "TT" or "Defendants") as being motivated by considerations having nothing to do with racial animus. Second, the Complaint does not otherwise contain allegations whose plausible inference is that TT was engaged in racial discrimination, or harbored any racial animus. Indeed, each and every conclusory accusation of racial animus is made "upon information and belief," with no factual meat on the bones.

> **i. Plaintiffs plead themselves out of a § 1981 claim because they allege TT authored the Memo in order to rebut claims regarding its own performance, and *not* because it harbored any discriminatory animus.**

Plaintiffs allege that TT was motivated by its own self-interest in authoring the so-called "Defamatory Memo." This alone defeats their claim of racial discrimination. Because § 1981 claims require a showing that race was the "but-for" cause of a plaintiff's injury, federal courts in Illinois consistently dismiss them if the allegations show the conduct was fueled by another motivation. *See Muhammad v. Oliver*, 547 F.3d 874, 881 (7th Cir. 2008) (dismissing § 1981 claim where plaintiff alleged defendants' conduct was "for the purpose of obtaining contracts…" because it was "an accusation of greed, not of racial discrimination."); *Walker v. Bank of Am., N.A.*, No. 21-CV-03589, 2024 WL 989391, at *5 (N.D. Ill. Mar. 7, 2024), *appeal dismissed*, No. 24-1471, 2024 WL 4432086 (7th Cir. Aug. 14, 2024) (dismissing § 1981 claim where plaintiff

pled defendant was "clearly motivated by greed, jealousy, and race," since "[u]nder § 1981…race cannot be a motivating factor; it must be the but-for cause of the alleged deprivation.")

This is consistent with other federal districts, which recognize that when a complaint identifies other possible motives for discrimination while making only conclusory allegations of discrimination, no "but for" causation has been pled. *Marcie Parke v. Assist Ambulance*, 23-CV-09066 (OEM) (CLP), 2025 WL 513266, at *9 (E.D.N.Y. Feb. 17, 2025) ("a complaint that identifies other possible motives…combined with a lack of specific factual support of racial animus, contradicts a claim of racial discrimination."); *Dukes v. Arc of E. Ascension*, CV 18-697-SDD-RLB, 2019 WL 3240053, at *3 (M.D. La. July 18, 2019) ("conclusory pleading style is especially ineffective [to plead 'but-for' causation], when the Complaint…raises other potentially plausible reasons" for the defendant's actions).

Here, while making only conclusory assertions that TT's actions were racially motivated, the Complaint explicitly lays out facts concerning a different motivation: it states that TT prepared the Memo "in an apparent attempt to cover up [TT's] own performance failures." (Compl., ¶ 38). Indeed, TT describes that the purpose of the Memo was "to defend its services," and it is clear from the remainder of the Memo that TT was directly responding to attacks on its own performance, as it rebutted "[t]he contention that [TT] somehow contributed to the field delays [as] completely unfounded and an attempt to disguise the Contractor's own underperformance." (Compl., Ex. A, pg. 1). The Memo was explicitly stamped as "Prepared in Anticipation of Litigation." And Plaintiffs' allegations explain that the impetus for TT preparing the Memo – in addition to wanting to defend itself against claims of mismanagement – was a request from The Obama Foundation, which "sought input from [TT] regarding the causes of the additional costs claimed by Concrete Collective in the REA." (Compl., ¶ 88).

In other words, the allegations of the Complaint, coupled with the attached Memo, demonstrate that *Plaintiffs* believe TT was acting in own self-interest to allegedly "cover up" its own performance failures – *as opposed to* acting from a place of racial animus. These allegations, coupled with only conclusory allegations of discrimination, doom a "but-for" theory of racial discrimination and should put Plaintiffs' § 1981 claim to bed.

  **ii.**  **The Complaint otherwise lacks allegations that paint a plausible (or any) picture of racial discrimination.**

In addition to explicitly alleging that TT was motivated by a desire to protect its own business interests – rather than a wish to harm Plaintiffs due to their race – the Complaint lacks any factual allegations that create a plausible inference of racial animus or discrimination. *See Walker*, 2024 WL 989391, at *5 (dismissing § 1981 claim, stating plaintiff "provides no factual allegations to support her conclusory statement that [defendant's] actions were motivated by her race…"). Here, there are no factual allegations – as opposed to conclusory statements – that plausibly "connect the dots" between TT's alleged conduct and racial animus against Plaintiffs. This is true both for Plaintiffs' allegations that they were unfairly subject to "burdensome" specifications, and for Plaintiffs' allegations regarding the Memo. Each is examined in turn.

First, Plaintiffs allege that TT imposed standards upon their work that were "excessively rigorous," "unnecessary," "unreasonable," and "atypical and unexpected." (Compl., ¶¶ 58, 67, 71). They singularly focus on rebar splice specifications, claiming TT "misinterpreted" them in a deliberately onerous manner. (Compl., ¶¶ 77-83). But Plaintiffs stop short of alleging that TT enforced (or criticized Plaintiffs for failing to adhere to) requirements that did not apply to the project.[1] And while Plaintiffs' allegations fixate on the rebar splice specifications, they ignore the

---

[1] Indeed, by selectively quoting (rather than attaching) the bid and contract documents, the Complaint deliberately obscures the rebar splice specifications applicable to the project. However, as TT stated in the Memo, and as will be further established if this case proceeds, the allegedly "burdensome" standards TT "imposed" were merely the

5

broader picture – TT flagged numerous other critical work deficiencies in the Memo, none of which Plaintiffs acknowledge, let alone refute. Plaintiffs cannot simply pluck one of TT's many criticisms of their work and hoist it up as self-evident discrimination, while staying silent on the panoply of other problems TT set forth in the Memo.

Further, there are no allegations that TT applied certain rebar splice specifications to Plaintiffs' work *because of* racial animus. Nor are there any allegations that similarly-situated non-minority contractors (or any contractors on the project) were spared from having to comply with the Concrete Reinforcing Steel Institute standards (which were part of the project to begin with). *See* FN 1, *supra*; *Marcia Parke*, 2025 WL 513266, at *9; *Dismukes v. Admin. Office of the Illinois Courts*, 12-CV-8800, 2014 WL 2978173, at *3 (N.D. Ill. July 2, 2014) ("Since [Plaintiff] does not suggest any comparators and an essential element of a disparate treatment claim is that similarly situated employees are treated differently, this Court concludes that [Plaintiff] fails to adequately plead [a 1981 claim based on] disparate treatment.") There are simply no facts to suggest TT arbitrarily applied specifications to make life difficult for Plaintiffs out of sheer racial cruelty.

Second, the allegations pertaining to the Memo fail to plausibly set forth that racism was at play. In addition to ignoring the bulk of the "extensive and wide ranging" list of Plaintiffs' shortcomings, Plaintiffs misrepresent the Memo to bolster their claim. They claim the Memo "expressly stat[ed] that the contractor and subcontractor firms that were not minority owned could have completed the work without problems." (Compl., ¶ 38). But the Memo says no such thing. It actually says that a "more experienced contractor would not have had this many problems."

---

Concrete Reinforcing Steel Institute's guidance on lap splices, which were *part of* the bid documents and Contract specifications, rather than ad hoc standards TT applied on a discriminatory basis. In the end, the Court need not reach this issue, as Plaintiffs fail to state a claim anyway, even crediting their misleading allegations and intentional omission of the documents governing the project.

(Compl., Ex. A, pg. 5). The Memo did not reference or suggest that any specific contractor, of any particular racial makeup, would have done better.

There are simply no allegations that suggest TT harbored racial animus, made statements regarding Plaintiffs' race, exhibited any observed racial bias, held non-minority contractors to different project standards, or had any discriminatory thoughts whatsoever in compiling the Memo to mount a defense of their own performance on the project. Rather, the Complaint is packed with pure conjecture of racial animus, which is insufficient to survive dismissal. Plaintiffs' § 1981 claim against TT is insufficient, and Count I must be dismissed.

### B. Plaintiffs fail to state a claim for libel because the statements they complain of are expressions of opinion, not fact.

Plaintiffs do not state a claim for libel because they complain about TT's expressions of opinion, rather than fact. To state a claim for libel per se under Illinois law, a plaintiff must allege: (1) a defamatory ***assertion of fact***, (2) publication of the defamatory assertion; and (3) injury to the plaintiff's reputation. *Ameritech v. Voices for Choices, Inc.*, 03 C 3014, 2003 WL 21078026, at *2 (N.D. Ill. May 12, 2003) (emphasis added).

Defamation claims cannot be based on statements of opinion. *Plastic Film Corp. of Am., Inc. v. Achilles USA, Inc.*, 06 C 5583, 2007 WL 9814704, at *2 (N.D. Ill. Sept. 26, 2007) ("a plaintiff's defamation claim should be dismissed if the alleged defamatory statements are merely vague, unprovable statements and statements of opinion.") (internal quotation marks omitted); *Haynes v. Alfred A. Knopf, Inc.*, 8 F.3d 1222, 1227 (7th Cir. 1993) ("[I]f it is plain that the speaker is expressing a subjective view, an interpretation, a theory, conjecture, or surmise, rather than claiming to be in possession of objectively verifiable facts, the statement is not actionable.")

Courts consider three factors in determining whether a statement is one of fact or, instead, of non-actionable opinion. First, whether "the language of the statement has a precise and readily

understood meaning, while bearing in mind that the first amendment protects overly loose, figurative, rhetorical, or hyperbolic language, which negates the impression that the statement actually presents facts." Second, "whether the general tenor of the context in which the statement appears negates the impression that the statement has factual content." And, last, "whether the statement is susceptible of being objectively verified as true or false." *Hopewell v. Vitullo*, 299 Ill. App. 3d 513, 518–19, 701 N.E.2d 99, 103–04 (1st Dist. 1998).

Here, these factors demonstrate that the alleged defamatory statements—assertions that Concrete Collective was "inexperienced," "underperformed," and had "problems that a more experienced contractor would not have had"—are opinions or subjective assessments of Plaintiffs' performance rather than objective facts and, therefore, are not actionable.

Courts around the country have explicitly recognized that statements about "inexperience" are inherently imprecise and incapable of objective verification. *See Chaves v. Johnson*, 230 Va. 112, 118–19, 335 S.E.2d 97, 101 (1985) ("charges of inexperience are by their nature a relative statement, depending for its import largely upon the speaker's viewpoint…"). As that *Chaves* court noted, "[a] corporal might seem inexperienced to a sergeant, but not to a private." Thus, the "relative nature of such opinions is obvious to anyone who hears them." *Id*; *also Hubbard v. Davis*, 2000 WL 1125554, at *4 (Tex. App. Aug. 10, 2000) (statement that plaintiff was inexperienced is "a matter of individual judgment and "rests solely in the eyes of the beholder."); *Cypress Advisors, Inc. v. Davis*, 2019 WL 7290948, at *8 (D. Colo. Aug. 28, 2019) ("concept of 'experience' – or, here 'inexperienced' – is one that is a necessarily subjective statement of opinion [which]… conveys nothing more than [defendant's] opinion that [plaintiff] was an inexperienced organization."); *Carbone v. Cable News Network, Inc.*, 1:16-CV-1720-ODE, 2017 WL 5244176, at *6 (N.D. Ga. Feb. 15, 2017), *aff'd in part, dismissed in part,* 910 F.3d 1345 (11th Cir. 2018)

(statement that plaintiff was "extremely inexperienced'" was generally a matter of opinion and cannot be proven true or false for purposes of a defamation claim.); *Rapp v. Laufers*, 2019 WL 4736996, at *6 (W.D. Wis. Sept. 27, 2019) (any general statement about party's experience "is not a 'fact' and is more appropriately classified as opinion.")

Similarly, Illinois courts consistently treat statements about "underperformance" or having "problems" as vague and not objectively verifiable. *Marron v. Eby-Brown Co., LLC*, 1:11-CV-2584, 2012 WL 182234, at *4 (N.D. Ill. Jan. 23, 2012) (statement that plaintiff "failed to properly perform his job" is non-actionable opinion which does not state a verifiable fact); *Pompa v. Swanson*, 2013 IL App (2d) 120911, ¶ 23, 990 N.E.2d 314, 320 (statement that plaintiff "performed his job unsatisfactorily" was not verifiable, but rather "merely a generalized, if not vague, description of job performance."); *Hopewell v. Vitullo*, 299 Ill. App. 3d 513, 521, 701 N.E.2d 99, 105 (1st Dist. 1998) ("Regardless of the fact that 'incompetent' is an easily understood term, its broad scope renders it lacking the necessary detail for it to have a precise and readily understood meaning. There are numerous reasons why one might conclude that another is incompetent; one person's idea of when one reaches the threshold of incompetence will vary from the next person's.")

Plaintiffs claim the following statements constitute defamation:

- That TT "bent over backwards to assist what everyone knows was a questionably qualified sub-contractor team in areas where a more qualified sub-contractor would not have required it." (Compl., ¶ 101).

- That "a more experienced contractor would not have had this many problems." (Compl., ¶ 102).

- That "[t]he construction issues were all unequivocally driven by the underperformance and inexperience of the concrete sub-contractor." (Compl., ¶ 108).

None of these allegedly defamatory statements are actionable because they pertain to Plaintiffs' qualifications and experience, which are not expressions of verifiable facts. Nor is the

9

speculative, hypothetical that a more experienced contractor would have fared better an actionable statement. *See Sciore v. Phung*, CV 19-13775, 2022 WL 950261, at *11 (D.N.J. Mar. 30, 2022) (hypothetical statements are not actionable as defamation); *Bellavia Blatt & Crossett, P.C. v. Kel & Partners LLC*, 151 F. Supp. 3d 287, 293 (E.D.N.Y. 2015), *aff'd,* 670 Fed. Appx. 731 (2d Cir. 2016) (when allegedly defamatory statement is "conjecture, hypothesis, or speculation, this signals the reader that what is said is opinion, and not fact.")

Additionally, the context in which TT made the statements confirms these are non-actionable opinions. The Memo explicitly states on its face at the top that it was "Privileged," "Confidential," and "Prepared in Anticipation of Litigation." (Compl., Ex. A, pg. 1). It further asserts that it was prepared by TT "to defend its services" in response to "Lakeside Alliance's contention that [TT] is somehow responsible for certain challenges encountered" and then outlines several of the accusations made against TT made by "the Contractors," *(i.e.*, Plaintiffs). *Id.* Under these circumstances, courts recognize that statements made with the potential for litigation in mind are understood as opinions rather than factual assertions. *Hopewell v. Vitullo*, 299 Ill. App. 3d 513, 518–19, 701 N.E.2d 99, 103–04 (1st Dist. 1998) (when statement regarding competence made constituted "efforts at posturing before ensuing legal battle" the context "plainly show[ed] that it is non-actionable opinion"). Plaintiffs fail to allege that TT made statements that could properly form the basis of a defamation claim.

### C. Plaintiffs do not state a claim for tortious interference with contract because they do not allege facts suggesting any third-party breach, or that TT engaged in wrongful conduct that would support the intentional tort.

Plaintiffs do not state a claim for tortious interference with contract. To do so, a plaintiff must plead, at minimum, "(1) the existence of a contract; (2) the defendant's awareness of the contract; (3) the intentional inducement of a contract breach; [and] (4) an actual breach of the

contract." *Brown v. Montgomery*, 20-CV-04893, 2022 WL 767254 (N.D. Ill. Mar. 14, 2022), (quoting *Cody v. Harris*, 409 F.3d 853, 859 (7th Cir. 2005)). The Complaint does not set forth facts supporting these elements. First, there are no allegations that a third party breached its contract with Plaintiffs. Second, there are no allegations that TT intended to cause such an outcome. And, three, there are no allegations that TT engaged in "wrongful" conduct or impropriety that can support the alleged tort.

      **i.     Plaintiffs do not allege a breach.**

Plaintiffs do not state a claim for tortious interference with contract because they do not plead a third-party breach of contract. *Nat'l Experiential, LLC v. City of Chicago*, 590 F. Supp. 3d 1116, 1129 (N.D. Ill. 2022) (no tortious interference claim without a breach); *Cody v. Harris*, 409 F.3d 853, 859 (7th Cir. 2005) ("A major deficiency in [plaintiff's] complaint is that he cannot plead facts to show a breach of either contract").

Though the Complaint references (but does not attach) the following four agreements, there are no allegations that shed light onto what breaches occurred:

      a) Contract between Concrete Collective and Lakeside ("Concrete Collective Subcontract"). (Compl., ¶ 133).

      b) Contract between II in One "and other joint venture partners" ("Concrete Collective Joint Venture") (Compl., ¶ 134).

      c) Contract between II in One JV and Concrete Collective (II in One JV Subcontract") (Compl., ¶ 135).

      d) Contract between Lakeside and the Obama Foundation. (Compl., ¶ 136).

Contract (d) is not between Plaintiffs and another party, but between two non-Plaintiff entities, so it cannot form the basis of the claim. As to the remainder, there are no allegations explaining what breach was allegedly caused by any tortious act allegedly committed by TT. Plaintiffs fail to allege what contractual provisions were violated, or give any sort of clue as to

what the underlying breach is. Nor do they attach any contractual documents that might shed light onto their theory, as Plaintiffs notably fail to attach any of the relevant agreements or the REA, which seem to be central to their claims.

### ii. Plaintiffs do not allege an underlying wrongful act that might prop up this tort claim.

Plaintiffs also fail to allege another key element of their interference with contract claim: that Defendants' actions were "wrongful." *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 131 Ill. 2d 145, 154–55, 545 N.E.2d 672, 676 (1989) (requiring the contract breach to be "caused by the defendant's *wrongful* conduct"). The supposedly bad acts that Plaintiffs set forth in the Complaint are TT allegedly:

> (a) "Attempting to enforce a non-standard and unreasonably burdensome interpretation of the specifications applicable to Concrete Collective's Work"
>
> (b) "Making false statements about Concrete Collective, II in One and II in One Rebar"
>
> (c) "Unlawfully discriminating against Concrete Collective, II in One and II in One Rebar on the basis of race".

(Compl., ¶ 138).

Allegation (a) does not set forth "wrongful conduct" but rather a professional opinion regarding appropriate project standards, which were promulgated by the Concrete Reinforcing Steel Institute as best practices. (Compl., Ex. A, pg. 6). Surely, project engineers do not open themselves up to tort liability by requiring subcontractors to adhere to industry-recognized best practices, even if those subcontractors find it "burdensome" to do so. Indeed, on this supposedly wrongful act, Plaintiffs can only muster allegations that summon negligence buzzwords (and not the language of intentional conduct). (Compl., ¶ 70) (TT "should have been aware" that a different standard was appropriate. But intentional interference with contract is an intentional tort, and

claims of negligence are insufficient. *Sterling Fire Restoration, Ltd. v. Wachovia Bank N.A.*, 12 C 3530, 2012 WL 4932845, at *6 (N.D. Ill. Oct. 16, 2012) (citing, *Ill. Bell Tel. Co. v. Plote, Inc.,* 334 Ill.App.3d 796, 268 Ill.Dec. 581, 778 N.E.2d 1203, 1211 (Ill.App.2002)).

The remaining allegedly wrongful conduct fails for the reasons discussed above. The supposedly false statements are non-actionable expressions of opinion which cannot form the basis of the tort, and Plaintiffs have no factual (as opposed to conclusory) allegations supporting their claims of racial discrimination. Plaintiffs fail to state a claim for tortious interference with contract.

**D. Plaintiffs do not state a claim for tortious interference with business relationships because they fail to allege reasonable expectancies and/or fail to allege TT directed any conduct towards the claimed expectancies, or both.**

Plaintiffs do not state a claim for tortious interference with prospective economic advantage, which requires a plaintiff to allege facts showing "(1) a reasonable expectancy of entering into a valid business relationship, (2) the defendant's knowledge of the expectancy, (3) an intentional and unjustified interference by the defendant that induced or caused a breach or termination of the expectancy, *Voyles v. Sandia Mortg. Corp.*, 196 Ill. 2d 288, 300–01, 751 N.E.2d 1126, 1133, 256 Ill. Dec. 289, 296 (2001).

As discussed above, Plaintiffs fail to allege TT engaged in any "intentional and unjustified interference." *See supra*, pgs. 10-13. That alone requires dismissal of this claim. But the claim fails for additional reasons. First, Plaintiffs fail to allege any facts showing that their expectancies are plausibly reasonable under the law. Second, Plaintiffs fail to allege facts showing TT directed its conduct towards the majority of the identified expectancies. Plaintiffs merely parrot the elements, but do not actually set forth facts plausibly showing TT committed this tort.

### i. There are no allegations supporting Plaintiffs' claimed reasonable expectancies.

"A reasonable expectancy requires more than the hope or opportunity of a future business relationship." *Doctor's Data, Inc. v. Barrett*, 170 F. Supp. 3d 1087, 1154 (N.D. Ill. 2016) (internal quotation marks omitted). Plaintiffs do not allege facts that plausibly support the existence of reasonable expectancies of future business relationships. There are only bare, conclusory allegations. Plaintiffs fail to allege facts that explain how or why they had a reasonable expectation of working on **<u>future</u>** projects with The Obama Foundation or any of the other parties referenced in Paragraph 143 of the Complaint: Lakeside Alliance, Turner Construction Company, Powers & Sons Construction Company, UJAMAA Construction, Inc., Brown and Momen, Inc., Safeway Construction Company, and "Other project owners and contractors in the Chicagoland area" (collectively, the "Third Parties").

Plaintiffs allege that Defendants' actions "prevented" new business relationships but do not provide factual support connecting Defendants' alleged conduct to actual lost contracts or specific opportunities; the reader is left to speculate. (Compl., Par. 146). The only thing gleaned from the Complaint is that the named companies were involved in the <u>current</u> project; nothing suggests there were any future opportunities with these companies with which TT allegedly interfered. This is plainly insufficient to state a claim. *Strabala v. Zhang*, 318 F.R.D. 81, 113 (N.D. Ill. 2016) ("Simply stating that [plaintiff] had a business expectancy, which Defendants interfered with thereby causing [plaintiff] harm, is conclusory and insufficient to put Defendants on notice of [plaintiff's] claim.") The Complaint also fails to properly set forth TT's knowledge of the expectancy, doing so only in the most conclusory manner. This does not suffice. *Bucciarelli-Tieger v. Victory Records, Inc.*, 488 F. Supp. 2d 702, 711-712 (N.D. Ill. 2007) (complaint must give some

information about how defendants knew of expectancy, as opposed to setting forth conclusory allegations). This claim fails for this reason, too.

### ii. Plaintiffs do not allege TT directed conduct at any third parties besides Lakeside and The Foundation.

Plaintiffs also fail to allege that TT directed its conduct at any of the Third Parties (*i.e.*, parties besides The Obama Foundation). In a tortious interference with expectancy claim, "[i]t is not enough for the defendant's action to impact a third party; rather, the defendant's action must be **directed** towards the third party." *Brown,* at *6; *Boffa Surgical Grp. LLC v. Managed Healthcare Assocs. Ltd.*, 47 N.E.3d 569, 577 (Ill. App. Ct. 2015) (defendant's conduct must "be directed in the first instance at the third party."); *Sunny Handicraft Ltd. v. Envision This!, LLC*, No. 14-cv-1512, 2015 WL 231108, at *9 (N.D. Ill. Jan. 16, 2015) ("tortious interference requires more than an allegation of conduct directed at any third party. The claim must involve wrongful conduct directed toward the alleged third-party business prospect.").

Here, TT's allegedly wrongful action (sending the Memo) was not "directed" at any of the Third Parties. The Complaint does not allege that TT sent the Memo or made any statement to, or took any other actions towards any of the Third Parties, including the hazily described "other project owners and contractors in the Chicagoland area" with whom the Plaintiffs claim to have had a future business expectancy (in a conclusory manner). None of these Third Parties were the audience for, or the recipients of, the so-called "Defamatory Memorandum." There are simply no allegations supporting Plaintiffs' bare-bones tortious interference with expectancy claim. Like the other counts in their pleading, this claim should be dismissed.

## CONCLUSION

For the foregoing reasons, Defendants Thornton Tomasetti, Inc. and Scott A. Schneider respectfully request that this Court dismiss Plaintiffs' Complaint in its entirety with prejudice.

Dated: March 4, 2025                              Respectfully submitted,

                                          **THORNTON TOMASETTI, INC.,**
                                          a New York Corporation, and SCOTT A.
                                          **SCHNEIDER, an individual**

                                          By:   */s/ Josh M. Leavitt*
                                                    One of Its Attorneys

Josh M. Leavitt (#6191417)
Laura A. Elkayam (#6303237)
Patrick B. Barnett (#6326570)
MUCH SHELIST, P.C.
191 N. Wacker Drive, Suite 1800
Chicago, Illinois 60606
(312) 521-2000
jleavitt@muchlaw.com
lelkayam@muchlaw.com
pbarnett@muchlaw.com

**Local Counsel for Defendants,
Thornton Tomasetti, Inc., and Scott A. Schneider**

# CERTIFICATE OF SERVICE

Josh M. Leavitt, an attorney, certifies that on March 4, 2025, he caused *DEFENDANTS' BRIEF IN SUPPORT OF 12(b)(6) MOTION TO DISMISS* to be electronically filed with the Clerk of the U.S. District Court, Northern District of Illinois, Eastern Division using the CM/ECF system, which will send notification of such filing to all parties of record.

Kathleen O. Barnes
John E. Sebastian
Joel B. Daniel
WATT, TIEDER, HOFFAR & FITZGERALD, L.L.P.
10 S. Wacker Drive, Suite 1100
Chicago, IL 60606-7411
kbarnes@watttieder.com
jsebastian@watttieder.com
jdaniel@watttieder.com
*Attorneys for Plaintiffs*

        */s/ Josh M. Leavitt*

15045570